[No. 13841. Department One. August 29, 1917.]

GEORGE W. BRISKY *et al., Appellants,* v. LAMB-DAVIS LUMBER
COMPANY *et al., Respondents.*[1]

WATERS AND WATER COURSES — DAMAGES FROM FLOODING — CON-
TRACTS—CONSTRUCTION. Under a contract settling pending litigation
and authorizing a mill company to maintain a dam and pond "as
heretofore" and to back up water and overflow the lands of the plain-
tiff "as heretofore done" so long as $200 is paid monthly, which was
to be "accepted as liquidated damages for flooding the lands," the
mill company cannot be held for payments after making alterations
in its dam lowering the water so that it no longer backed up and
overflowed the lands of the plaintiff.

SAME. The fact that, by the contract, existing litigation was to
be settled out of court, does not show that part of the consideration
for the monthly payments was the past damages suffered, where the
gist of the contract was for future damages, and at that time $7,679
was paid on a judgment previously recovered, and $5,000 for dam-
ages since accrued, which will be presumed as ample to discharge all
accrued damages.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. Error in in-
structions is harmless where the verdict is only advisory.

CANCELLATION OF INSTRUMENTS—ADEQUATE REMEDY AT LAW—DE-
FENSE TO CONTRACT. A contract for the payment of monthly damages
for the right to maintain a dam and flood lands is not to be cancelled
upon removal of the cause by lowering the dam, as that fact would
defeat recovery under the contract and furnishes an ample remedy
at law.

Appeal from a judgment of the superior court for Chelan
county, Grimshaw, J., entered May 11, 1916, upon the ver-
dict of a jury rendered in favor of the defendants, in an
action on contract. Affirmed.

*C. Victor Martin,* for appellants.

*Skuse & Morrill* and *L. J. Nelson,* for respondents.

CHADWICK, J.—Prior to the third day of January, ·1913,
respondents had maintained a dam in the Wenatchee river.

[1]Reported in 167 Pac. 118.

The lands of appellants had been flooded from time to time. Litigation followed. On the day mentioned, appellants were maintaining an action for damages against respondents. Negotiations for a settlement culminated in a written agreement wherein, after reciting the interest and ownerships of the parties, it was stipulated, *inter alia*, that the respondents would pay to appellants accrued damages and "the sum of $2,400 per year for each and every year that they [respondents] shall continue to operate their mill, float logs down said river, or keep said dam in said river, and overflow said lands, said sum to be paid in monthly payments of $200 each," which appellants agreed to accept in full settlement of all damages for future flooding. It was agreed that the respondents would not cause the water to be backed up on appellants' land to any greater height than "heretofore" maintained.

At the time the agreement was entered into, respondents paid appellants a judgment theretofore obtained in the sum of $7,679, and $5,000 in payment of all damages since accrued. Respondents met the terms of the contract from the 13th day of January, 1913, up to November, 1915. Appellants brought this suit to recover the payments due under the contract for the months of November and December, 1915.

Respondents answered, admitting the contract, but alleging by way of defense that, since its execution, they had dredged the mill pond and lowered the dam, so that the level of the water was lowered and would thereafter be lower than the level of the appellants' land, and that, the cause of damage being removed, they were entitled in equity to a cancellation of the contract and relief from its obligations by appropriate decree.

Upon issue joined, the court called a jury and took both a general and special verdict, upon which findings were made and a decree entered awarding a recovery of four hundred dollars, being the amount due under the contract for Novem-

ber and December, 1915, and cancelling the contract. The special verdicts are as follows:

"First: Did the dam as maintained by the defendants across the Wenatchee river, during the months of January, February and March, 1916, cause the waters in Wenatchee river and Icicle creek to overflow and damage the lands in question of the plaintiffs? No.

"Second: Will the dam across the Wenatchee river as reconstructed and now maintained by defendants, cause the waters in Wenatchee river and Icicle creek to overflow the lands in question of the plaintiffs? No.

"Third: Will the dam across the Wenatchee river as reconstructed and now maintained by defendants, cause the waters in Wenatchee river and Icicle creek to overflow the lands in question of the plaintiffs to the same extent as such lands were overflowed by said dam, as the same was constructed and maintained prior to the third day of January, 1913? No."

The general verdict was simply a finding for the appellants in the sum of $400 and attorney's fees.

Much is made of the record by appellants, but unless their theory of the case be accepted *in toto*, there can be no reason for denying effect to the decree of the court.

Briefly stated, the contention of appellants is that they are entitled to monthly payments under the contract so long as respondents maintain a dam and mill upon the Wenatchee river as they did and now are maintaining them, and further, that the alteration in the dam is not a substantial alteration or one calculated to change the relations of the parties or the hazards of the appellants, in that no more has been done than to remove the splash boards; that they can be immediately replaced at the will of respondents, and so long as this is true and a replacement likely to occur, they are entitled to the benefit of their contract. The whole case depends upon that part of the contract following which we have italicized:

"In consideration of the payments above stipulated for, the parties of the first part hereby give and grant unto the said

parties of the second part the privilege of operating the said mill, dam and *pond as heretofore* and to float or drive logs down the said Wenatchee river and store them in said Wenatchee river, Icicle creek and pond *as heretofore,* and they are hereby given the right to back the water up over and upon the lands of the parties of the first part *as heretofore done,* so long as said payments are made, if made at the time and in the manner provided herein, and *the payments herein provided for will be accepted as liquidated damages for flooding the lands* of the parties of the first part for each year from and after date hereof."

Placing ourselves as nearly as we may in the situation of the parties, it is evident that, when the contract was made, they had in mind a condition—a recurrent flooding of the land; that it had caused a substantial damage; that, rather than remove the cause of the damage, respondents were willing to liquidate such damages as might thereafter accrue by agreeing to pay a sum certain from month to month. The *condition* to be avoided was the injury resulting from the mill as *"heretofore"* operated, and the remedy was to liquidate prospective damages, as respondents had presently satisfied accrued damages for *flooding the lands.*

We cannot follow appellants in their contention that, by the terms of the contract, they are entitled to a monthly payment so long as respondents maintain a mill and dam at the present locations and float logs down the river; nor does it follow that the words "and overflow said lands" add no new element, or that, by their use, the agreement of the parties that such overflow is a necessary incident to the operation of the mill is emphasized. To so hold would be to bind respondents to meet a condition which may have long since been overcome, and to lose sight of the real motive which sustained the contract in the first place.

But appellants say that, inasmuch as a part of the consideration for the agreement to take $200 per month in lieu of prospective damages to be recovered at law was the sur-

render of a right to recover damages which may have been more substantial than the amount accepted at the time the contract was made and the suit dismissed, respondents cannot now be heard to deny its terms, whatever the condition may be.

This is plausible, but not sound. The contract recites that the pending action was to be settled out of court, and, as we may add, it is not further accounted for in the contract. The gist of the contract is future damages; past damages are no part of the subject-matter. Upon the record before us, we must assume that the satisfaction was full and complete and that the amount paid and received was ample to discharge all damages accrued.

Other questions going to facts and instructions given and refused are discussed. The facts as found by the jury and confirmed by the court are ample to sustain the decree as modified. If appellants' theory be rejected—and this the law, as we understand it, compels us to do—no fault can be found with the instructions of the court. It is also settled that a decree will not be set aside for fault in the instructions where the verdict is merely advisory.

Counsel puts the question, "what is appellant's remedy if it transpires that their lands are hereafter flooded?" This may be met when such conditions arise. It is within the legitimate scope of this opinion, however, to say that they have all the remedies they ever had.

The court below decreed a cancellation of the contract. In this particular we think the decree of the lower court went too far. If the respondents have removed the cause of the flooding of the appellants' land, there is no consideration for the payments under the contract, and that fact would in the future, as here, defeat a recovery on the part of appellants. That being so, respondents' remedy at law is ample and complete. No fraud, mistake or undue influence being shown in the making of the contract, there exists no ground for its cancellation by a court of equity.

With the modification of the decree as to the cancellation of the contract, the judgment is affirmed.

ELLIS, C. J., MOUNT, MAIN, and MORRIS, JJ., concur.